USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/14/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                               :

CVI GVF (LUX) MASTER S.A.R.L.,               10 Civ. 5216 (WHP)
                               :       Appeal from Bankruptcy
          Appellant,          Case No. 08-13555 (JMP)

                               :

      -against-                   MEMORANDUM & ORDER

                               :

LEHMAN BROTHERS
HOLDINGS INC.,                       :

          Appellee.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
                               :

SANTA FE PARTNERS, LLC, et al.,        10 Civ. 5311 (WHP)
                               :       Appeal from Bankruptcy
          Appellants,        Case No. 08-13555 (JMP)

                               :

      -against-                  :

                               :

LEHMAN BROTHERS
HOLDINGS INC.,                       :

          Appellee.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

          Appellants CVI GVF (Lux) Master S.a.r.l. ("CVI") and Santa Fe Partners, LLC

and certain related funds (collectively, "Santa Fe") appeal from an order of the United States

Bankruptcy Court for the Southern District of New York (Peck, Bankr. J.) (the "Bankruptcy

Court") dated May 26, 2010 denying their motions to treat as timely their late-filed claims in the

bankruptcy of Lehman Brothers Special Holdings, Inc. ("LBHI") (the "Lehman Bankruptcy").

For the following reasons, the Bankruptcy Court's order is affirmed.

-1-

BACKGROUND

I.  The Underlying Obligations

Santa Fe and CVI's predecessor in interest, Black River Asia Fund Ltd. ("Black River"),[1] originally held claims against an LBHI subsidiary, Lehman Brothers International (Europe) ("LB Europe").  (Appellants' Appendix ("AA") 134, 168.)  Those claims were based on LB Europe's alleged breach of certain securities lending and repurchase agreements entered into with Santa Fe and Black River.  (AA 132-35, 167-68.)

On June 9, 2005, LBHI's board adopted a resolution providing that LBHI would assume the liabilities and obligations of certain LBHI subsidiaries, including LB Europe.  (AA 71-73.)  On January 4, 2008, LBHI executed a second guarantee specific to LB Europe (together with the 2005 resolution, the "Guarantees").  (AA 74-75.)

On September 15, 2008, LB Europe filed for bankruptcy in the United Kingdom (the "LB Europe Bankruptcy").  (AA 168.)  In a notice on its website dated June 10, 2009, the administrator for the LB Europe Bankruptcy, PriceWaterhouseCoopers ("PwC"), posted information regarding the Guarantees for LB Europe's creditors.[2]  The notice stated that "[c]reditors of [LB Europe] and other persons may have claims against LBHI pursuant to these documents."  (AA 168.)  Appellants did not learn of the existence of the Guarantees until October 2009.  (AA 137, 168.)

_____

[1] In both its brief in the Lehman Bankruptcy and its appeal brief in this proceeding, CVI cites a document entitled "Evidence of Transfer of Claim" in support of its assertion that CVI succeeded to Black River's interest.  (AA 166.)  That document makes no mention of any CVI entity.  Nevertheless, this Court has no reason to question CVI's assertion.

[2] http://www.pwc.co.uk/eng/issues/lehman_holdings_bar_date_application_update_190609.html.) (cited in Mem. Decision Denying Mots. For Leave to File Late Claims at 18 n.29).

## II.   The Lehman Bankruptcy

On September 15, 2008, LBHI and several subsidiaries filed for bankruptcy in United States. (AA 168.)  On July 2, 2009, the Bankruptcy Court issued an order (the "Bar Date Order") establishing, inter alia, the deadline for filing proofs of claim. (Mem. Decision Denying Mots. For Leave to File Late Claims dated May 20, 2010 ("Decision") at 3 n.8.)  The Bar Date Order set a deadline of September 22, 2009 for the filing of general claims against the debtors (the "General Bar Date") and required creditors with claims based on guarantees to submit a "Derivative Questionnaire" by October 22, 2009 (the "Questionnaire Deadline"). (Decision at 4.)  Appellants do not contest that they received notice of these deadlines. (Decision at 5.)  Nonetheless, Santa Fe filed both its proof of claim and its questionnaire on October 22, 2009. (AA 135.)  Black River filed its questionnaire on October 22, 2009 and its proof of claim on October 29, 2009. (AA 168-69.)

## III.   The Bankruptcy Court Decision

In February 2010, Santa Fe and CVI asked the Bankruptcy Court to treat their claims as timely filed pursuant to Fed. R. Bankr. P. 9006(1).  They argued that (i) any delay should be excused because they were unaware of the Guarantees until after the General Bar Date; (ii) they had no reason to know of the Guarantees; and (iii) the Guarantees were not reasonably discoverable.  Santa Fe and CVI argued further that, although they missed the General Bar Date, they filed the requisite claim information by the Questionnaire Deadline, and thus LBHI suffered no prejudice because it possessed the information it needed to evaluate their claims.

By Memorandum Decision dated May 20, 2010, the Bankruptcy Court denied the motions of seven creditors (including Santa Fe and CVI) to have their late-filed claims deemed timely. (Decision at 2.) The Bankruptcy Court addressed Appellants' motions together because they were "practically identical." (Decision at 17-18.)

As to whether Appellants' delay was within their control, the Bankruptcy Court found that the Guarantees "were readily ascertainable" because they were posted on PwC's website three months prior to the General Bar Date. (Decision at 17-18.) The Bankruptcy Court held that "with the exercise of reasonable diligence," Appellants "could have discovered the existence of the guarantee claims." (Decision at 18.) It reasoned that "creditors must bear the responsibility for investigating and performing reasonable diligence to identify those claims that they have against debtors in bankruptcy" and that "creditors act at their peril where they fail to adequately investigate and pursue their rights." (Decision at 18.)

Addressing the prejudice to LBHI in permitting the late-filed claims of all seven creditors, the Bankruptcy Court pointed out that "[c]reditors have filed over 66,000 claims in an aggregate liquidated amount exceeding $899 billion." (Decision at 7.) It also noted that it had entered several procedural orders to address the "large number of claims" and the "significant administrative burdens" attendant to processing them. (Decision at 8.) While the Bankruptcy Court acknowledged that "it is difficult to comprehend how a handful of late-filed claims will add materially to the burdens that already exist," it accepted LBHI's contention that permitting any late-filed claims "is highly undesirable from [LBHI's] perspective and potentially quite disruptive." (Decision at 8.) The Bankruptcy Court found that "the extraordinary size of the claims management project is itself a significant factor in determining prejudice" and that any

-4-

prejudice "is not traceable to the filing of any single additional claim but to the impact of

permitting exceptions that will encourage others to seek leniency." (Decision at 9.)

Accordingly, the Bankruptcy Court found that "the prejudice factor favors [LBHI]." (Decision

at 9.)

Finally, the Bankruptcy Court distinguished its excusable neglect findings from

two prior motions:

> Having applied the Pioneer factors nine times, the Court believes
> that it is in a position to distinguish the excusable neglect found
> earlier from the inexcusable neglect described in the pending
> motions. The Court articulates the distinction as follows: Neglect
> in filing a claim before the expiration of a clear bar date is
> excusable when the creditor, after conducting a reasonable amount
> of diligence, is justifiably confused or uncertain as to whether a
> particular transaction giving rise to a claim is or is not subject to
> the bar date order. That confusion was the principal reason for [the
> Court's prior findings of excusable neglect]. . . . By comparison,
> the reasons offered by the Movants demonstrate a lack of care or
> thoughtful attention to the preparation and filing of their proofs of
> claim.

(Decision at 19.) These appeals followed.

## DISCUSSION

I.  Legal Standard

a.  Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error and its

conclusions of law de novo. Fed. R. Bankr. P. 8013; In re Vouzianas, 259 F.3d 103, 107 (2d Cir.

2001). "Bankruptcy court decisions . . . deny[ing] a request to file [a] late [claim] are reviewed

for abuse of discretion." In re Enron Corp., 419 F.3d 115, 124 (2d Cir. 2005); In re Drexel

Burnham Lambert Grp., Inc., 146 B.R. 84, 87 (S.D.N.Y. 1992) (Pollack, J.) ("Since the
determination of whether . . . to grant a request to file late is expressly left to the Bankruptcy
Court's discretion, this Court may review the Bankruptcy Court's decision for abuse of
discretion only."). A bankruptcy court abuses its discretion when its decision (i) "rest[s] on an
error of law (such as application of the wrong legal principle) or a clearly erroneous factual
finding, or (ii) . . . though not necessarily the product of a legal error or a clearly erroneous
factual finding, cannot be located within the range of permissible decisions." In re Aquatic Dev.
Grp., Inc., 352 F.3d 671, 678 (2d Cir. 2003) (quoting Zervos v. Verizon N.Y., Inc., 252 F.3d 163,
169 (2d Cir. 2001)).

      b.  Excusable Neglect Standard

        Under Fed. R. Bankr. P. 9006(b)(1), a bankruptcy court may deem a late-filed
claim timely if the delay was the result of "excusable neglect." The Supreme Court has held that
excusable neglect "is at bottom an equitable [determination], taking account of all relevant
circumstances surrounding the party's omission," including "the danger of prejudice to the
debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the
delay, including whether it was within the reasonable control of the movant, and whether the
movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S.
380, 395 (1993). The Court of Appeals takes "a hard line in applying the Pioneer test,"
"focus[ing] on the third factor[—]the reason for the delay, including whether it was within the
reasonable control of the movant." In re Enron Corp., 419 F.3d 115, 122-23 (2d Cir. 2005)
(quotations omitted). Indeed, "where the [filing deadline] is entirely clear, [the Court of
Appeals] continue[s] to expect that a party claiming excusable neglect will, in the ordinary

course, lose under the Pioneer test." Enron, 419 F.3d at 122-23. "The late-filing creditor carries

the burden of proving excusable neglect." In re DPH Holdings Corp., 434 B.R. 77, 82 (S.D.N.Y.

2010); accord Enron, 419 F.3d at 121.


II.   Analysis

             Appellants argue that the Bankruptcy Court abused its discretion by (1) adopting a

more stringent excusable neglect standard than was established in Pioneer, and (2) concluding

that the acceptance of Appellants' late-filed claims would prejudice LBHI.  This Court disagrees.

     a.   Excusable Neglect Standard

             Appellants contend that the Bankruptcy Court held that a late-filed claim may be

excused only where a creditor is justifiably confused over whether a bar date order applies to its

claim.  Appellants argue that this holding removes the elasticity inherent in the excusable neglect

standard and contradicts the Supreme Court's directive in Pioneer that excusable neglect "is not

limited to situations where the failure to timely file is due to circumstances beyond the control of

the filer." Pioneer, 507 U.S. at 391.

             Contrary to Appellants' contention, the Bankruptcy Court did not adopt a per se

rule.  Appellants' argument rests on the Bankruptcy Court's statement that "[n]eglect . . . is

excusable when the creditor, after conducting a reasonable amount of diligence, is justifiably

confused or uncertain as to whether a particular transaction giving rise to a claim is or is not

subject to the bar date order."  (Decision at 19.)  However, the Bankruptcy Court made that

observation in a portion of its opinion titled "Excusable Neglect in the Lehman Cases"

explaining why it had accepted two prior late-filed claims but denied the claims of Appellants

and five others. Appellants ignore the fact that the Bankruptcy Court performed a detailed

analysis under Pioneer because that analysis is fatal to their claims.

        In a thoughtful and reasoned opinion, the Bankruptcy Court considered the

Pioneer factors and held that Appellants' late filings should not be excused where the prejudice

and delay factors favored LBHI. First, the Bankruptcy Court appropriately gave enhanced

consideration to whether Appellants' delay was within their control, see Enron, 419 F.3d at 122-

23, and found that they could have discovered the Guarantees through the exercise of reasonable

diligence. That factual determination was not clearly erroneous. See Vouzianas, 259 F.3d at

107. Appellants had more than three months to discover the notice on PwC's website notifying

creditors of the Guarantees. See Enron, 419 F.3d at 122-23 ("[A] party claiming excusable

neglect will, in the ordinary course, lose under the Pioneer test."). Appellants' argument that the

Bankruptcy Court effectively required creditors to "scour the internet" for all potential claims is

hyperbole. To learn of the Guarantees, Appellants only needed to visit a familiar website once

within a three month period. Given the more than $250 million that Santa Fe and CVI had at

stake, (Tr. of Hr'g, Oct. 15, 2010 at 5), their lack of diligence with respect to the LB Europe

Bankruptcy is incomprehensible. Under these circumstances, the Bankruptcy Court did not

abuse its discretion in applying the Pioneer factors.

        Appellants' reliance on In re Bruno Machinery Corp., No. 06 Civ. 1172 (LEK),

2007 WL 2071747, at *4 (N.D.N.Y July 12, 2007) is misplaced. In Bruno, the court found that

the bankruptcy court abused its discretion by holding that because a creditor's failure to file a

timely claim "was completely within its [or its counsel's] . . . control, . . . there can be no finding

of excusable neglect." 2007 WL 2071747, at *4. The district court reversed, holding, inter alia,

that the bankruptcy court improperly adopted a "per se finding of no excusable neglect" where

the failure to timely file was within the creditor's control. Bruno, 2007 WL 2071747, at *4. By

examining the details of PwC's notice concerning the Guarantees and weighing the prejudice to

LBHI, the Bankruptcy Court employed no similar per se rule. Accordingly, the Bankruptcy

Court did not abuse its discretion.

    b. Prejudice

        Appellants further contend that the Bankruptcy Court failed to set forth facts

supporting its conclusion that permitting late-filed claims would prejudice LBHI. The

Bankruptcy Court's decision belies that contention. In the section addressing the prejudice to

LBHI, the Bankruptcy Court observed that the Lehman Bankruptcy is unprecedented in size and

includes over 66,000 claims in an aggregate amount nearing $1 trillion. On that record, the

Bankruptcy Court concluded that "the extraordinary size of the claims management project is

itself a significant factor in determining prejudice" and that any prejudice "is not traceable to the

filing of any single additional claim but to the impact of permitting exceptions that will

encourage others to seek leniency." (Decision at 9.) Because the Court of Appeals expressly

permits a court to consider "whether allowing a claim would be likely to precipitate a flood of

similar claims," Enron, 419 F.3d at 130, the Bankruptcy Court did not abuse its discretion. See

In re KMart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (finding that the debtor "could easily find

itself faced with a mountain of such claims" if appellant's single claim were permitted).

Appellants' argument that the Bankruptcy Court could have accepted claims filed after the

General Bar Date but before the Questionnaire Deadline is misplaced. While this may have

dampened the flood of late-filed claims, it nevertheless could have induced another wave of

filings that would delay and complicate management of the claims process.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order is affirmed.  The Clerk of

the Court is directed to terminate all pending motions and mark these cases as closed.

Dated: February 14, 2011
       New York, New York


SO ORDERED:


WILLIAM H. PAULEY III
U.S.D.J.


*Counsel of Record:*

Michael Krauss, Esq.
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
*Counsel for Appellants*

Shai Y. Waisman, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
Suite 3426C
New York, NY 10153
*Counsel for Appellee*